# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

_____

| In Re: | Bankruptcy Case |
|---|---|
| **TRACEY JO HOFFMAN,** | **No. 15-40391-JDP** |
| **Debtor.** | |

_____

# MEMORANDUM OF DECISION

_____

**Appearances:**

Kathleen A. McCallister, Boise, ID, Chapter 13 Trustee.

Alexandra O. Caval, Twin Falls, ID, Attorney for Debtor.

John Ritchie, Twin Falls, ID, Attorney for Robert and Kathi Meyers.

## *Introduction*

Chapter 13[1] trustee Kathleen A. McCallister ("Trustee") objects to

confirmation of the plan proposed by debtor Tracey Hoffman ("Debtor").

---

[1]Unless otherwise indicated, all chapter and section references are to the
Bankruptcy Code, 11 U.S.C. §§ 101 – 1532, all rule references are to the Federal
Rules of Bankruptcy Procedure, Rules 1001 – 9037.

MEMORANDUM OF DECISION – 1

To resolve the objection, the Court must decide whether two claims filed in

the case, based upon debts for which the debtor is not personally liable,

may be treated as allowed unsecured claims, and may share in

distributions under Debtor's proposed chapter 13 plan.  After conducting a

confirmation hearing, and having considered the parties' briefs and

arguments, as well as applicable law, this Memorandum constitutes the

Court's findings of fact and conclusions of law.  Fed. R. Bankr. P. 7052.

### *Facts*

The material facts are simple and undisputed.[2]

Debtor lived with her parents in their home for an extended time,

caring for them when they became ill.  When her parents could not pay the

debts secured by the home, creditors Robert and Kathi Meyers ("the

Meyers"), obtained a state court decree authorizing them to foreclose a

deed of trust.  The Meyers scheduled the home for a sheriff's sale to occur

on April 30, 2015.  However, before the sale, Debtor's parents passed away.

---

[2] These facts are derived primarily from the parties' pleadings and briefs.

MEMORANDUM OF DECISION – 2

On April 27, 2015, Debtor commenced a probate proceeding in state court and was appointed to act as the personal representative of her parents' estate. On April 28, 2015, Debtor, acting as personal representative, conveyed the home to herself as an individual.

On April 29, 2015, Debtor filed a chapter 13 petition commencing this bankruptcy case. On July 2, 2015, Debtor proposed an amended chapter 13 plan ("Plan"). Dkt. No. 32.

According to the Plan, an appraisal obtained by Debtor on the home indicates its value is $86,000. *Id.* at ¶ 5.2. The house is encumbered by three liens, but Debtor is not personally liable for any of the debts secured by these liens. The first and second priority liens are deeds of trust securing loans made to Debtor's parents by the Meyers. The other encumbrance on the house is a statutory lien asserted by the State of Idaho for Debtor's parents' unpaid Medicaid expenses of over $315,000.

The balance due on the Meyers' first deed of trust is about $74,000. The Plan proposes to cure the existing default on this debt with monthly payments to be made through the Plan by Trustee. *Id.* at ¶ 5.3 Debtor will

MEMORANDUM OF DECISION – 3

directly make the current monthly payments on this loan. *Id.* at ¶ 5.2.

The second deed of trust balance is about $22,000. Given the value of the house, and the amount owed on the first deed of trust, this debt is only partially secured. The Plan proposes to pay about $12,000 on this debt, representing the amount of equity in the house securing the debt in monthly payments, together with interest, via Trustee. *Id.* The Plan proposes that the balance of this debt will constitute an unsecured claim, and that the Meyers will share in the pro rata distributions to be made to unsecured creditors by Trustee .[3] *Id.* at ¶ 5.2 & 7.2.

Because there is no equity in the house over and above the amounts owed on the Meyers' liens to secure the State of Idaho's claim, the Plan proposes to "strip" the statutory lien from the house, and to treat this claim as wholly unsecured. *Id.* at ¶ 5.4. The State of Idaho will share in pro rata plan distributions to unsecured creditors. *Id.* at ¶ 7.2.

---

[3] Normally, under § 1322(b)(2), the rights of creditors whose debts are secured only by a security interest in the debtor's house may not be modified in a chapter 13 plan. Apparently, however, the note secured by the Meyers' second deed of trust will mature during the term of the Plan, and therefore, as provided in § 1322(c), it is not protected by the Code's "anti-modification" provision.

MEMORANDUM OF DECISION – 4

The Plan will not pay the unsecured claims in full.[4]

After appropriate notice, neither the Meyers nor the State of Idaho objected to the Plan's proposed treatment of their claims.  Indeed, the Meyers, who are represented by counsel in the bankruptcy case, have seemingly consented to this treatment.[5]

Trustee, for her part, acknowledges that the Plan's proposals to cure and maintain the Meyers' first deed of trust debt, to "cram down" the second deed of trust, and to strip the State of Idaho's statutory lien, are proper under the Code.  Even so, Trustee objected to the Plan's proposal to pay any amounts to the Meyers and the State of Idaho as unsecured

---

[4]  The claims register in this case reflects that a variety of claims were filed by creditors for unsecured debts personally owed by Debtor.  The total amount of these claims is, however, dwarfed by the amount of the State of Idaho's claim, meaning that these other creditors will receive only a minimal share of the prorated plan distributions to unsecured claimants.

[5]  In a refreshing display of pragmatism, the Meyers' attorney informed the Court at the hearing that, in their view, the Plan proposes to pay the Meyers as much, perhaps even more, than they would receive on their claims were there no bankruptcy filing and they were left to foreclose on the house.  While the Meyers' share of payments to unsecured creditors will be meager, assuming Debtors' parents had no other assets, they are undoubtedly correct that the Plan's treatment of the second deed of trust claim represents a favorable outcome for them.

MEMORANDUM OF DECISION – 5

creditors.  Dkt. No. 39.  Trustee contends that the treatment of these two

obligations as unsecured claims in the bankruptcy case, and their payment

under the Plan on a pro rata basis with Debtor's own unsecured debts,

should not be allowed because Debtor is not personally obligated to pay

either the Meyers or State of Idaho.  Dkt. No. 44, p. 5.  Put another way,

Trustee argues, under the Plan, Debtor's parents' creditors are being paid

at the expense of Debtor's own creditors.

Resolution of Trustee's objection is the sole impediment to

confirmation.[6]  To resolve it, the Court must determine whether Debtor's

proposal to pay the debts owed by her parents to the Meyers, and to the

State of Idaho, as allowed unsecured claims is appropriate in this case.

///

_____

[6]  While Debtor transferred the home to herself shortly before filing her
bankruptcy petition in an obvious, last-minute attempt to prevent the foreclosure
sale, significantly, neither Trustee nor any of the creditors have alleged that
Debtor's bankruptcy case was not filed, or the Plan proposed, in good faith.  *See*
§ 1325(a)(3), (7)  (providing that, to be confirmed, a debtor's case, and the
proposed plan, must be filed in good faith.).  The lack of a good faith objection is
likely justified by the fact that her parents' house had also served as Debtor's
home for some time, and her sincere desire to save the home from foreclosure.

MEMORANDUM OF DECISION – 6

*Analysis and Disposition*

**I.**

A chapter 13 plan may "designate a class or classes of unsecured claims . . . ." § 1322(b)(1).  However, "a plan may place a claim . . . in a particular class only if such claim . . . is substantially similar to the other claims . . . in such class." *Id.*; § 1122(a).  And, if a plan does classify unsecured claims, it "shall provide for the same treatment of each claim within [that] class . . . ." § 1322(a)(3).

In this case, the Plan requires Debtor to make a total of 60 monthly payments to Trustee.  Dkt. No. 32, ¶ 2.1.  After provisions for payments to administrative, priority and secured claimants, the Plan proposes that there be a single class of unsecured claims, and provides the same treatment of all claimants within that class.  *Id.* at ¶ 7.2 (". . . the Trustee will, from funds available after payment of priority and secured claims, pay pro-rata dividends to all Creditor(s) who have filed timely allowed unsecured claims.").  It is this term of the Plan that Trustee targets as improper.  Simply stated, the confirmation issue raised by Trustee is

MEMORANDUM OF DECISION – 7

whether the Meyers and the State of Idaho hold "allowed unsecured

claims" under the Code so that they may share in distributions under the

Plan.  If so, Debtor's classification and treatment of those claims in the Plan

in the same fashion as all of Debtor's other unsecured debts is appropriate,

and the Plan should be confirmed.  If the Meyers and State of Idaho do not

hold allowed unsecured claims, they can not properly be classified and

treated the same as creditors holding allowed unsecured claims based on

Debtor's personal debts.

## II.

What constitutes a "claim" in a bankruptcy case is "a

straightforward issue of statutory construction to be resolved by reference

to the text, history, and purpose of the Bankruptcy Code." *Johnson v. Home*

*State Bank*, 501 U.S. 78, 83 (1991) (internal quotation marks omitted). Under

the Code, a "claim" may be either a:

> (A) right to payment, whether or not such right is reduced to
> judgment, liquidated, unliquidated, fixed, contingent, matured,
> unmatured, disputed, undisputed, legal, equitable, secured, or
> unsecured; or

MEMORANDUM OF DECISION – 8

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

§ 101(5).  Commenting on this definition, this Court has observed that "Congress intended this language to adopt the broadest definition of 'claim'" and that the "'right to payment' [means] nothing more or less than an enforceable obligation . . ." *In re KM Allied of Nampa*, 11.2 IBCR 69, 70-71 (Bankr. D. Idaho 2011) (citing *Pennsylvania Dept. of Pub. Welfare v. Davenport*, 495 U.S. 552 (1990)).

Here, outside of the bankruptcy case, it is undisputed that the Meyers and the State of Idaho do not hold a right to payment from Debtor personally.  Instead, they are "nonrecourse" creditors, who can look only to the Debtor's home for satisfaction of their debts.  *In re KM Allied of Nampa, LLC*, 11.2 IBCR at 71 (quoting *First Fed. Bank of Cal. v. Weinstein (In re Weinstein)*, 227 B.R. 284, 292 (9th Cir. BAP 1998) (describing the rights of a nonrecourse creditor)).

///

MEMORANDUM OF DECISION – 9

# III.

## A.

Do the Meyers' and the State of Idaho's limited rights constitute a "claim" in Debtor's bankruptcy case as contemplated in § 101(5)?  In a case with somewhat similar facts, the Court has previously answered this question in the affirmative.

In *KM Allied of Nampa*, a chapter 11 debtor had executed a deed of trust and UCC fixture filing on its property in favor of a bank to secure another party's debt.  *Id.* at 70.  In the debtor's later bankruptcy case, based upon the Supreme Court's holding in *Johnson*, this Court decided that while the debtor was not personally liable for the debt, the bank's right to resort to the debtor's property to collect the debt was sufficient to constitute a "claim" in the chapter 11 case under § 101(a)(5).  *Id.* at 71.

A review of the reasoning of *Johnson* is also appropriate here.  As the Court explained in that decision, the Code's definition of "claim" under § 101(5) includes nonrecourse claims because such a creditor "still retain[s] a 'right to payment' in the form of its right to proceeds from the sale of the

MEMORANDUM OF DECISION – 10

debtor's property," and the "creditor's surviving right to foreclose on the mortgage can be viewed as a 'right to an equitable remedy' for the debtor's default on the underlying obligation." *Id.* at 71 (quoting *Johnson,* 501 U.S. at 84). Applying this reasoning to the facts in that case, the Court concluded that "there [was] no doubt that [a] surviving mortgage interest corresponds to an 'enforceable obligation' of the debtor." *Id.* (quoting *Johnson,* 501 U.S. at 84). Thus, the bank held a claim.

## B.

The conclusion by the Supreme Court, and by this Court, that a nonrecourse creditor's rights in a debtor's property constitutes a claim for bankruptcy purposes is also supported by other provisions of the Code.

Under § 501(a), a "creditor" may file a proof of claim in a bankruptcy case. A "creditor" includes any "entity that has a claim against the debtor that arose at the time of or before the order for relief." § 101(10). A debtor's commencement of a bankruptcy case by the filing of a voluntary petition constitutes an order for relief. §§ 301(a), (b). And, as § 102(2)

MEMORANDUM OF DECISION – 11

provides, a "'claim against the debtor '*includes claim against property of the*

*debtor . . . .'*"   As this Court observed, a "fair reading of this section would

mean a creditor who has a claim enforceable only against the debtor's

property nonetheless has a claim against the debtor for purposes of the

code."  *In re KM Allied of Nampa*, 11.2 IBCR at 71 (quoting *Johnson* 501 U.S.

at 85) (emphasis added)).  The collective import of these Code provisions is

that an entity that is owed a debt that is secured by the debtor's property

on the date of the filing of the bankruptcy petition is a creditor, holds a

claim, and may file a proof of claim in that bankruptcy case.

However, the terms of another provision of the Code, § 502, govern

whether that claim will be "allowed" in the bankruptcy case.  The rules are

simple enough.  A creditor's properly-filed proof of claim is "deemed

allowed" unless a party in interest objects to it.  § 502(a).  If there is an

objection to the claim, § 502(b)(1) requires the bankruptcy court to allow it

"except to the extent that . . . such claim is unenforceable against the debtor

*and* property of the debtor." (emphasis added).   Since a nonrecourse claim

MEMORANDUM OF DECISION – 12

can be enforced against the debtor's property, it constitutes an allowed claim in the bankruptcy case. Stated another way, under the Code, if a nonrecourse creditor files a proof of claim in the property-owner's bankruptcy case, that claim will be deemed allowed unless an interested party objects to it. But even if there is an objection to the nonrecourse creditor's claim, it must be allowed because it is enforceable against the debtor's property.

### C.

In addition to the statutory language, the reasoning in *Johnson* was also based on the "legislative and background history" of the Code. 501 U.S. at 85. Reviewing the background history of the Code, the Supreme Court inferred that Congress fully expected that the definition of claim under § 101(5), "may consist of nothing more than an obligation enforceable against the debtor's property." *Id.* at 86. This inference was supported by the legislative history surrounding the adoption of § 102(2); it demonstrated that Congress intended this provision to extend to "all

MEMORANDUM OF DECISION – 13

interests having the relevant attribute of nonrecourse obligations where the creditor's rights are against the property of the debtor, and not the debtor personally." *Id.* at 87.

IV.

Here, as in *Johnson* and *KM Allied of Nampa,* the claims of the Meyers and the State of Idaho are secured by liens on Debtor's property, the house.[7]  And like the creditors in those cases, the Meyers and the State of Idaho cannot seek recovery from Debtor personally.  Despite this, as of the date of the bankruptcy filing, both the Myers and the State of Idaho had a right to payment from the proceeds of the sale of Debtor's house that was subject to their liens.  And, in the absence of a voluntary sale, they could

---

[7] Of course, unlike the debts in this case and in *KM Allied of Nampa,* the debt in *Johnson* was incurred by the debtor.  However, as this Court noted, this is a "distinction without a difference."  *In re KM Allied of Nampa,* 11.2 IBCR at n.13.  Based on the Supreme Court's conclusion that Congress intended to extend the reach of § 102(2) "to all interests having the relevant attributes of nonrecourse obligations *regardless of how these interests come into existence*[,]" this Court held that if two scenarios "reflect situations where the creditor has a 'claim' against a debtor's property but not against the debtor personally" there is "no material distinction" between them. *Id.* at n.13 & 71 (emphasis added).  The same analysis applies concerning the claims before the Court today.

MEMORANDUM OF DECISION – 14

also have sought to invoke an equitable remedy to enforce their liens: to foreclose on Debtor's property.  In short, the Meyers and the State of Idaho are creditors that hold "claims" for purposes of this bankruptcy case.

These claims were also allowed claims in this bankruptcy case.  Both the Meyers and the State of Idaho have properly filed proofs of claim in Debtor's bankruptcy case.  Because there has been no objection to them, the claims are deemed allowed in this case.  Indeed, at this point in the bankruptcy case, even had objections to the claims been filed, the Court would be required to allow their claims to the extent of the full amount the Meyers and State of Idaho were owed as of the date of the bankruptcy filing because their liens remain enforceable against Debtor's property.

**V.**

But are the allowed claims held by the Meyers and the State of Idaho "allowed unsecured claims" such that they can be properly paid pro rata along with other unsecured creditors under the Plan?

The Trustee contends that because the Plan proposes to avoid a

MEMORANDUM OF DECISION – 15

portion of the Meyer's second deed of trust, and to strip the State of

Idaho's statutory lien, under § 506(a), the then-unsecured portions of those

claims are no longer enforceable against either Debtor or Debtor's

property, and thus, would no longer be allowed unsecured claims.  Taking

a contrary view, Debtor argues that the Plan's provisions bifurcating the

Meyers' second deed of trust claim, and stripping the State of Idaho's

statutory lien, have no effect on the determination of whether the claims

are allowed unsecured claims.  While the parties' arguments highlight a

question that has puzzled the courts, under these facts, the Court agrees in

this case with Debtor.

## A.

This issue is one of first impression for the Court.  As noted above,

while this Court has addressed the possible treatment of a nonrecourse

claim in a chapter 11 case, the Court is persuaded that the treatment of

liens in chapter 13 is sufficiently different to warrant a different analysis

than in that chapter 11 case.  *See In re KM Allied Nampa*, 11.2 IBCR at 72.

MEMORANDUM OF DECISION – 16

Other bankruptcy courts that have considered this question, most in the context of a "chapter 20" case,[8] have employed different reasoning and reached different conclusions.[9] Today, the Court concludes that the unsecured portions of claims resulting from the bifurcation or stripping of nonrecourse creditors' liens under § 506 are indeed allowed unsecured

---

[8] A "chapter 20" case is where a debtor has obtained a chapter 7 discharge, and then later sought to use a chapter 13 plan to strip down or off undersecured liens, even though the debtor will not be eligible for a second discharge.

[9] *Compare, e.g., In re Eaton*, BAP No. EC-05-1261-PaNMa, 2006 WL 6810924 (9th Cir. BAP Feb. 28, 2006) (in an unpublished decision, holding that a would-be secured creditor whose claim is allowed only as unsecured gets paid as an unsecured creditor); *Victorio v. Billingslea*, 470 B.R. 545 (Bankr. S.D. Cal. 2012) (holding such claims are allowed); *In re Akram*, 259 B.R. 372 (Bankr. C.D. Cal. 2001) (finding § 524 does not support valuing such claims at zero, as doing so would provide a result forbidden by *Dewsnup v. Timm*, 502 U.S. 410 (1992)); *In re Gounder*, 266 B.R. 879 (Bankr. E.D. Cal. 2001) (holding such claims become an allowed unsecured claim against the estate and must be paid); *with In re Sandrin*, 2015 WL 5120765 (Bankr. D. Colo. Aug. 28, 2015) (holding such claims must not be paid because doing so provides a remedy not provided in state law without a specific code provision directing to do so); *In re Rosa*, 521 B.R. 337 (Bankr. N.D. Cal. 2014) (finding such claims are disallowed, expressly disagreeing with *Akram* and *Gounder*); *In re Sweitzer*, 476 B.R. 468 (Bankr. D. Md. 2012) (holding such claims are disallowed because the in personam rights discharged in chapter 7 could not be resurrected and allowed as unsecured claims in a subsequent chapter 13 case).

MEMORANDUM OF DECISION – 17

claims, but does so for slightly different reasoning than relied upon in

other decisions.

Section 506(a) provides, "[a]n allowed claim of a creditor secured by

a lien on property in which the estate has an interest . . . is a secured claim

to the extent of the value of such creditor's interest in the estate's interest in

such property . . . and *is an unsecured claim* to the extent that the value of

such creditor's interest . . . is less than the amount of such allowed claim."

(emphasis added).  As can be seen, the Code expressly dictates that the

portion of a claim secured by a debtor's property that exceeds the value of

that property is an unsecured claim.  Indeed, as the Supreme Court has

observed, when a claim is bifurcated under § 506(a), the result is two

claims, a secured claim and an unsecured claim.  *U.S. v. Ron Pair Enter.,*

*Inc.*, 489 U.S. 235, 239 & n.3 (1989) (explaining that "[S]ection 506(a)

requires a bifurcation into *separate and independent secured claim and*

*unsecured claim components*.") (emphasis added); *In re Enwally*, 368 F.3d

1165, 1168 (9th Cir. 2004) (stating that, by operation of § 506(a), a secured

MEMORANDUM OF DECISION – 18

loan may be separated into two distinct claims.).

Some courts have concluded that the language of § 506(a), standing

alone, effectively converts a nonrecourse claim against the debtor's

property to recourse claim against the bankruptcy estate.  *Gounder*, 266

B.R., at 881 (stating that a debtor cannot seek disallowance of the claim

under § 502(b)(1), because § 506(a) gives the creditor recourse against the

estate); *see also In re Dang*, 467 B.R. 227, 238 (Bankr. M.D. Fla. 2012); *In re

Hill*, 440 B.R. 176, 183 (Bankr. S.D. Cal. 2010).   While the Court tends to

agree with this notion, even if § 506(a) does not supply the complete

answer to the question, and instead, § 502 controls whether the unsecured

claim resulting from bifurcation or a lien-strip is allowed (or not), in

Debtor's case, the creditors' claims in this case constitute allowed

unsecured claims.

**B.**

Section 1327 of the Code outlines the effect of confirmation of a plan.

Section 1327(a) explains that a confirmed plan in binding on the debtor and

MEMORANDUM OF DECISION – 19

each creditor.  And §§ 1327(b) and (c) dictate the effect of confirmation on

creditors' interests in property of the estate.  In relevant part, § 1327(b)

provides that confirmation of a plan "vests all the property of the estate in

the debtor."  Section 1327(c) requires that, unless otherwise provided in the

plan or in the order confirming the plan, the property that vests in the

debtor does so "free and clear of any claim or interest of any creditor

provided for by the plan."

   According to Trustee, assuming the creditors' liens are removed

from Debtors' property via confirmation of the Plan, the claims of the

Meyers and the State of Idaho should then be disallowed under § 502(b)(1),

because those claims are then "unenforceable against the debtor and

property of the debtor . . . for a reason other that because such claim is

contingent or unmatured."  She contends that since these debts are

nonrecourse, and may not be enforced against Debtor personally, once

they are no longer enforceable against Debtor's property, they must be

disallowed.

MEMORANDUM OF DECISION – 20

The Court disagrees with the premise of Trustee's argument.  Recall, under § 1327(c), property revests in the debtor "free and clear of any claim . . . of a creditor provided for by the plan" unless "otherwise provided in the plan . . . ."  Thus, the Court must look to the Plan to determine the effect of Plan confirmation on the Meyers' and the State of Idaho's liens.  In doing so, the Court concludes that Trustee's contention that the creditors' bifurcated or stripped liens are "unenforceable" post-confirmation is inconsistent with the language of the Plan.

The Plan makes clear that the State of Idaho's statutory lien will be retained, post-confirmation, until Debtor completes the Plan.  *See* Amended Chapter 13 Plan, Dkt. No. 32, ¶ 5.4  (providing "To each of these creditors, your timely filed claims will be treated in this plan as unsecured claims and *upon the successful completion of this plan* your lien will be avoided.") (emphasis added).  In other words, until Debtor completes the Plan, the statutory lien of the State of Idaho remains enforceable against Debtor's property.

MEMORANDUM OF DECISION – 21

In regards to the Meyers' second deed of trust lien, while the Plan

seemingly calls for the avoidance of the lien to the extent it exceeds any

equity in the house upon confirmation of the Plan, the Plan also provides

that "[i]f the case is dismissed or converted without completion of the plan,

such lien shall be retained by the secured creditors to the extent recognized

by applicable non- bankruptcy law [*i.e.,* the full amount of the lien]."  *Id.* at

¶ 5.2.  Thus, the partial avoidance of the Meyers' second deed of trust lien

is also contingent on Debtor's successful completion of the Plan.[10]  Indeed,

if Debtor fails to complete the plan, and the case is either converted to

another chapter or dismissed, that lien will be fully effective.[11]  This

---

[10] Unlike in a chapter 11 case, where under § 1141(a), confirmation of plan constitutes a discharge, in a chapter 13 case, discharge, and likewise, permanent avoidance of a stripped lien, is conditioned on the debtor's successful completion of the plan. §1328; *see also In re Okosisi*, 451 B.R. 90, 96 (Bankr. D Nev. 2011); *In re Boukatch*, 533 B.R. 292, 301 (9th Cir. BAP 2015) (explaining that in a typical chapter 13 case, the lien avoidance becomes permanent upon entry of discharge).

[11] These provisions of the Plan are consistent with the requirements of the Code.  For example, if Debtor fails to complete the Plan, and the case were to be converted to chapter 7, § 348(f)(1)(C)(i) provides that "the claim of any creditor . . . shall continue to be secured by that security . . . notwithstanding any [§ 506(a)]

MEMORANDUM OF DECISION – 22

contingent treatment of the Meyers' lien is an important factor in deciding

whether the claim should be disallowed since, under § 502(b)(1), a claim is

only disallowed if it is unenforceable against the debtor and the debtor's

property "*for a reason other than because such claim is contingent*." (emphasis

added).

Because, under the Plan, the State of Idaho's lien is retained, and

because the Meyer's second deed of trust lien is only contingently avoided,

the claims of both creditors are not subject to disallowance under

§ 502(b)(2).  Therefore, Trustee's position that, if the Plan is confirmed, the

claims of the Meyers and the State of Idaho are no longer "enforceable"

against Debtor's house is incorrect.  To the contrary, the Plan's proposal to

pay these claims as allowed unsecured claims is appropriate.

## C.

---

valuation or determination of the amount of an allowed secured claim . . . "  If,
instead, the case were to be dismissed, § 349(b)(1)(C) provides that any lien
voided under § 506(d) is reinstated.

MEMORANDUM OF DECISION – 23

Treating the claims of the Meyers and the State of Idaho as allowed

unsecured claims is required in this case for another, even more

conspicuous, reason.  No doubt, if confirmed, the Meyers and the State of

Idaho would be bound by the terms of the Plan.  § 1327(a).   As a result,

during the term of the Plan, these creditors would be limited to the right to

receive only pro rata distributions as unsecured creditors; they would not

be entitled to enforce their avoided or stripped liens against Debtor's

property.

Even so, no interested party has objected to the allowance of those

creditors' proofs of claim.  Because of this, the claims of the Meyers and the

State of Idaho are "deemed allowed" under § 502(a), and will continue to

be so unless and until an interested party objects and the Court disallows

them.  And because the creditors' liens remain potentially enforceable

against Debtor's property until the Plan is completed, even were an

objection filed, under § 502(b)(1), the Court would be required to allow the

creditors' claims .

MEMORANDUM OF DECISION – 24

*Conclusion*

The Court concludes that Trustee's objection to confirmation of the

Plan should be overruled, and that the Plan should be confirmed.  The

Code compels this conclusion.  If the Plan is confirmed, § 506(a) dictates

that, to the extent the value of Debtor's property is less than the amount of

the claims of the Meyers and the State of Idaho secured by liens on

Debtor's house, those claims will constitute allowed unsecured claims.  In

addition, the Plan provides that the State of Idaho will retain its lien until

the completion of the Plan, and that the avoidance of the Meyers' lien is

contingent on completion.  Since the creditors will continue to have

potentially enforceable liens against Debtor's house even after

confirmation, the creditors hold allowed claims.  For all these reasons,

Debtor's proposal to pay the Meyers and the State of Idaho pro rata along

with Debtor's other unsecured debt is proper.

A separate order will be entered.

MEMORANDUM OF DECISION – 25

Dated: September 17, 2015

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION – 26